UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Criminal No. 07-034 (RMU) |
| v. | : | |
| YAW OTENG-AGIPONG, | : | |
| Defendant. | : | |

**GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING**

The United States of America, by and through its counsel, the United States Attorney for the District of Columbia, hereby submits in the above-referenced matter this memorandum in aid of sentencing of defendant Yaw Oteng-Agipong. Defendant pled guilty to offering a bribe to a construction inspector employed with the District of District of Columbia Department of Consumer and Regulatory Affairs ("DCRA"). As is discussed below, the government requests that the Court imposes a sentence within the applicable Sentencing Guidelines range of 6-12 months in Zone B, but defers to the Court as to the length and type of guidelines sentence, including any applicable fine.

**I. FACTUAL BACKGROUND**

On February 9, 2007, the government filed a one-count Information charging defendant with offering and promising a bribe to a public official, in violation of 18 U.S.C. § 201(b)(1)(A). Presentence Investigation Report ("PSR"), at p. 3, ¶ 1. On March 8, 2007, defendant pled guilty to the Information. *Id.*, ¶ 2. Sentencing is now set before the Court on June 14, 2007, at 10:30 a.m. *Id.*, at p. 1.

According to the statement of offense filed in this matter and the PSR, at pp. 3-4, ¶ 4-9, at all relevant times defendant, a former employee of DCRA, was employed in a private capacity as a

structural engineer.[1] On September 20, 2006, a limited liability corporation ("LLC") received a stop work order from a DCRA employee, who was a public official. The stop work order was issued because the LLC allegedly exceeded the scope of its building permit. As a result, the LLC retained defendant to help resolve the stop work order favorably.

Defendant went to the DCRA employee's office the following day to discuss the stop work order. Defendant asked the DCRA employee to approve the building plans so the construction could continue and told the DCRA employee that he would give him $2,000 for doing so. Defendant offered and promised to pay the $2,000 to influence the DCRA employee in the performance of an official act. If it required more money for that purpose, defendant was willing to pay more money. The DCRA employee agreed to take the money in return for lifting the stop work order. The DCRA employee also agreed to lower the fine that had been levied against the LLC property for exceeding its permit from $6,000 to $3,000.

On September 22, 2006, defendant met with the LLC partners with the intent to request the money from the LLC to pay the stop work order fine, the permit fee, a fee for defendant's services, and the bribe to the DCRA employee. Defendant requested from the partners $20,000 to cover these expenses and he described the bribery scheme, although he did not identify to whom within DCRA he would pay the money. The partners agreed that they would take steps to obtain the money to give it to defendant for those purposes.

On September 28, 2006, defendant asked the DCRA employee to meet at defendant's office.

---

[1] At the time of the guilty plea, defendant did not contest the statement of offense, which he had signed. Rather, his attorney gave an oral presentation on "two points of clarification." Sentencing Transcript, at p. 12; *see* PSR, at p. 4, para. 12; and at pp. 14-15 (Defendant's Objections and Probation Office Response). Those clarifications did not change the facts in the statement of offense or the facts set forth above.

The DCRA employee told defendant he did not meet people in offices and asked that they meet on the street. The DCRA employee and defendant then met at a pre-arranged location on the street. At the beginning of the meeting, the DCRA employee patted down defendant. He then asked defendant if he was wearing a wire and if he had the money. Defendant did not have the bribe money at that time.

On October 10, 2006, defendant met at a pre-arranged location with the LLC partners to obtain the $20,000 from them. The money was not transferred at that time, however, because of the arrival of agents from the Federal Bureau of Investigation. The agents took a statement from defendant in which he admitted the above-described bribery scheme.

## II. SENTENCING FACTORS

Title 18, United States Code, Section 3553(a), provides numerous factors that the Court shall consider in sentencing a defendant. These factors are discussed below numbered as they are in Section 3553(a).

(1) The Court should consider the nature and circumstances of the offense. Here, the offense was a corrupt attempt to obtain an unwarranted advantage for a client by offering a significant bribe to a public official. The offense negatively effected the integrity or perception of integrity of the D.C. government. Moreover, it was done by someone who previously worked for the respective agency, DCRA, thus, someone who should have known better and had some interest in not taking away from the good name of that agency.

The Court should also consider the history and characteristics of the defendant. In this matter, defendant has only a very limited and dated criminal record, PSR, at pp. 5-6, ¶¶ 24-26, and a consistent employment record. *Id.*, at p. 8, ¶¶ 38-43.

(2) The Court should also consider the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence; (C) to protect the pubic; and (D) to provide defendant with appropriate education or vocational training. In this matter, as discussed above, the offense was serious and requires adequate punishment. The sentence should also be of such a nature so as to deter others from engaging in similar conduct and to protect the public from other criminal acts by defendant. As to the final consideration, defendant does not appear to need further education or vocational training.

(3) The Court should consider the kinds of sentences available. The maximum term of imprisonment for this offense is 15 years, with a term of supervised release of not more than 3 years, but the defendant, alternatively, is eligible for up to five years of probation with a condition of at least six months of home confinement. PSR, at pp. 10-11, ¶¶ 50, 55, and 58.

(4) The Court should also consider the sentencing range established by the United States Sentencing Guidelines ("USSG"). As to these guidelines, the probation officer believes, and the government concurs, that the defendant's resulting Total Adjusted Offense Level for the offense is 10, his Criminal History category is I, and his USSG range is 6 to 12 months. PSR, at p. 5, ¶ 23, and p. 10, ¶ 51. Because the applicable guidelines range is in Zone B, the guidelines sentence may be satisfied by imprisonment or home confinement. *Id.*, at p. 11, ¶ 52. The applicable fine range is $2,000 to $20,000. *Id.*, at p. 12, ¶ 65.

(5) The Court should consider any pertinent policy statement issued by the Sentencing Commission. The government is not aware of any pertinent statements beyond those captured in the applicable Sentencing Guidelines range, which is discussed above.

(6) Moreover, the Court should consider the need to avoid unwarranted sentencing disparities among defendants with similar records. Here, a guidelines sentence would help prevent such disparities between defendant and similar defendants.

(7) Finally, the Court should consider the need to provide restitution. In this matter, restitution is not an issue in this case because the bribe payment was not made and because the loss to the District of Columbia government was an intangible one. *See* PSR, at p. 4, ¶ 9, and p. 12, ¶ 67.

### III. DEFENDANT'S LEVEL OF COOPERATION/ U.S. ATTORNEY'S OFFICE DEPARTURE COMMITTEE

In the plea letter in this case, there is standard language to the effect that defendant agreed to cooperate with the government. Plea Letter, January 11, 2007, at pp. 3-4, ¶ 6. The government, in return, agreed to advise the Court "of the full nature, extent, and value of the cooperation provided by [defendant] to the United States." *Id.*, at p. 5, ¶ 8.

In order to determine what potential cooperation defendant might be able to provide to the government, representatives of the government met with defendant twice after he had entered his guilty plea. Based on those discussions, as well as discussions between defendant and the FBI agents prior to the plea, it is clear to the undersigned attorney for the government that there are no productive areas in which the defendant could provide cooperation to the government. Accordingly, other than discussions with defendant about what information he has, the government has not requested anything further from defendant.

Also pursuant to the plea letter, the government agreed to inform the Departure Committee of the United States Attorney's Office for the District of Columbia ("Departure Committee") of the full nature, extent, and value of the cooperation provided by the defendant to the United States. *Id.*

The undersigned attorney has complied with this obligation. The Departure Committee found that the defendant did not provide substantial assistance in the investigation or prosecution of another person or entity and did not recommend a downward departure. Accordingly, the government is *not* moving for a departure downward in the offense level of the defendant under the Sentencing Guidelines.

### IV.  RECOMMENDATION

Defendant acknowledged offering a $2,000 bribe to a public official in an attempt to obtain preferential treatment for the LLC from DCRA, an agency for which defendant previously worked. This is serious conduct that needs to be adequately punished. Payment of or offering bribes to a public official is a corruption of a public service institution. Corruption by public officials in the District of Columbia, at whatever level, is a serious and, unfortunately, too often recurring matter. Corruption erodes the public confidence in government officials, employees and institutions. Citizens will accept a system they believe operates fairly, but not one that they do not believe does so. Moreover, although most public servants are honest and hard working, their morale is hurt by those who engage in or encourage corruption and their reputations suffer.

To his credit, however, once defendant was confronted by the investigators in this matter, he quickly admitted his illegal actions. Furthermore, he agreed to plead guilty pre-indictment.

Accordingly, the government requests that the Court impose a sentence within the guidelines range of 6-12 months, but defers to the Court as to the actual length and type of guidelines sentence. *See* United States v. Bras, ___ F.3d ___, 2007 WL 1158752, *3 (D.C. Cir. April 20, 2007) (*quoting* United States v. Dorcely, 454 F.3d 366, 376 (D.C. Cir. 2006)) ("a sentence within a properly calculated Guidelines range is entitled to a rebuttable presumption of reasonableness"). This

deference includes as to what amount of fine defendant should pay.  *See* PSR, at p. 12, ¶ 65 (fine range of $2,000 to $20,000), and p. 10, ¶ 49 ("[defendant] appears to have the ability to a pay a fine within the guidelines range").  As stated above, restitution is not an issue in this case.

>Respectfully Submitted,
>
>JEFFREY A. TAYLOR
>UNITED STATES ATTORNEY
>D.C. Bar Number 498610

By:      / s /
_____
DANIEL P. BUTLER
D.C. Bar #417718
Assistant U.S. Attorney
555 4th Street, N.W., Room 5231
Washington, D.C. 20530
(202) 353-9431
Daniel.Butler@usdoj.gov