# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| UNITED STATES of AMERICA )<br>Plaintiff, )<br>vs. )<br> )<br>YAW OTENG-AGIPONG )<br>Defendant. ) | Criminal No. 07-034 (RMU) |

### MOTION TO PLACE UNDER SEAL THE MEMORANDUM IN AID OF SENTENCING ON BEHALF OF DEFENDANT YAW OTENG-AGIPONG

Now comes Defendant Yaw Oteng-Agipong ("Mr. Agipong"), through his undersigned counsel, and respectfully asks the Court to place his Memorandum in Aid of Sentencing ("Memorandum") under seal and not display it in the public record. The following good cause supports this request.

Mr. Agipong contacted Assistant U.S. Attorney Daniel Butler to determine the position of the United States with regard to this Motion. The United States defers to the Court as to whether Mr. Agipong's Memorandum should be filed under seal.

Concurrent herewith, Mr. Agipong files his Memorandum in connection with his guilty plea for bribery of a public official. This case has attracted media attention and has been the subject of media coverage, which has been effective in reporting on the facts and events associated with this matter.

In his Memorandum, Mr. Agipong recounts details of the offensive conduct which led to his conviction, as well as personal and heartfelt accounts of his

-2-

experience related thereto which would be embarrassing to have broadcast in a public media forum. Consequently, he requests that his Memorandum be filed under seal and remain confidential.

WHEREFORE, for these reasons and others appearing to this Honorable Court, Mr. Agipong requests the Court to file his Memorandum under seal.

May 21, 2007                              Respectfully submitted.

                                    By: /s/ Brigitte L. Adams
                                        Brigitte L. Adams (D.C. Bar #426034)
                                        For Defendant Yaw Oteng-Agipong
                                        2800 Wisconsin Ave., N.W. #208
                                        Washington, D.C. 20007
                                        (202) 363-8190 Tel

## CERTIFICATE OF SERVICE

I hereby certify that on this 21st day of May, 2007, a copy of the foregoing Memorandum in Aid of Sentencing was served, by consent, via facsimile transmission on Daniel P. Butler for the United States of America at 555 4th Street, NW, Room 5231, Washington, D.C. 20530, at (202) 307-2304.

/s/ Brigitte L. Adams

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES of AMERICA )<br>   Plaintiff, )<br>vs. )<br> )<br>YAW OTENG-AGIPONG )<br>   Defendant. ) | Criminal No. 07-034 (RMU) |

ORDER TO PLACE MEMORANDUM
IN AID OF SENTENCING UNDER SEAL

Good cause having been shown, the Court orders as follows:

The Memorandum in Aid of Sentencing filed by Defendant Yaw Oteng-Agipong and supporting attachment shall be placed under seal by the Clerk of Court, and shall not be made part of the public record for any purposes.

Dated: _____    _____
            Ricardo M. Urbina
            United States District Judge

PARTIES TO BE NOTIFIED UPON ENTRY OF ORDER:

*For Plaintiff the United States*:
Daniel P. Butler, Esq.
555 4th Street, NW, Room 5231
Washington, D.C. 20530

*For Defendant Yaw Oteng-Agipong*:
Brigitte L. Adams, Esq.
2800 Wisconsin Ave., N.W. #208
Washington, D.C. 20007

MOTION TO PLACE THIS FILING
UNDER SEAL IS FILED AND PENDING.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES of AMERICA ) <br> Plaintiff, ) <br> vs. ) <br>  ) <br> YAW OTENG-AGIPONG ) <br> Defendant. ) <br> ) | Criminal No. 07-034 (RMU) <br><br> Sentencing Date: June 14, 2007 |

### MEMORANDUM IN AID OF SENTENCING
### ON BEHALF OF DEFENDANT YAW OTENG-AGIPONG

Defendant Yaw Oteng-Agipong ("Mr. Agipong"), by and through his undersigned counsel, respectfully files this Memorandum to aid the Court when it sentences him on June 14, 2007, beginning at 10:30 a.m.

In considering a sentence in Mr. Agipong's case, the Court must take into account the factors set forth in 18 U.S.C. §3553(a), discussed below, together with the Court's mandate to "impose a sentence sufficient, but not greater than necessary," 18 U.S.C. §3553(a). Accordingly, Mr. Agipong pleads for leniency and asks the Court to sentence him to a term of probation with conditions, including a period of home detention and community service, as necessary and appropriate.

Due to media publicity of this case and the personal and sensitive nature of this filing, Mr. Agipong requests by separate motion filed concurrently herewith that the Court place this Memorandum under seal to be kept confidential.

## **DISCUSSION**

Federal sentencing standards are rooted in the principles of parsimony and necessity.[1] In view of that, 18 U.S.C. §3553(a)(2) requires the sentencing Court to consider certain factors in forming a sufficient sentence. They are (1) the seriousness of the offense, (2) deterrence to future criminal conduct, (3) public protection from further crime by this defendant, and (4) effective rehabilitation and treatment. In addition, the Court is required to consider (1) the nature and circumstances of the offense, and (2) the history and characteristics of the defendant. *United States v. Crosby*, 397 F.3d 103, 112-114 (2d Cir. 2005). These factors are discussed below.

### **A. Facts and Circumstances of the Offense**

The nature and circumstances of this offense warrant the Court to take a mitigating direction at sentencing.

Mr. Agipong retired in 2005 from a long career as a public servant and structural engineering chief with the D.C. Department of Consumer and Regulatory Affairs ("DCRA"). He worked largely in a back office outside the reach of the public.

Never during the course his government career or before September 2006 did Mr. Agipong ever take, offer or entertain the thought engaging in a bribe. As a hard working and proud family man with strong cultural and spiritual roots, he is repulsed by public corruption, having fled as a youth from a country where corruption was rampant.

After retirement in 2005, Mr. Agipong started his own private engineering practice, assisting clients with his engineering talents and in obtaining construction permits from DCRA. Remembering the generosity shown to him when he first arrived in

---

[1] See, Richard Frase, *Punishment Purposes*, 58 Stan. L. Rev. 67, 82-83 (2005), and *United States v. Jimenez-Beltre*, 440 F.3d 514, 525 n. 8 (1st Cir. 2006).

this country, Mr. Agipong has often provided engineering and administrative advice without remuneration to help others, in the American way. As of September 2006, his new private business was advancing successfully and Mr. Agipong undertook increasingly greater and more challenging projects. It was at that time that the 5th Street, LLC ("LLC") asked Mr. Agipong for help in its time of crisis with DCRA.

The LLC was desperate to get a stop work order removed on a renovation project on which it could not afford to be idle, and against which the DCRA had threatened increased and onerous sanctions. Mr. Agipong reviewed the LLC's building permit and supporting documentation and determined that some of the drawings for the project needed to be reworked to come into compliance with the DCRA's requirements. Mr. Agipong also identified the $6,000 fee assessed against the LLC as having been calculated in error. He discussed the discrepancy with DCRA and was able to get the fee adjusted downward by $3,000, which was the appropriate amount.

While Mr. Agipong could quickly prepare the new drawings and redraft the building permit application, he knew that it would take several weeks to process the reworked drawings and application through the DCRA to obtain a new construction permit and remove the stop-work order, due to the administrative backlog at DCRA.

Feeling pressure from the LLC to resolve the matter fast, Mr. Agipong suggested to the LLC that he offer DCRA a bribe to expedite the administrative processing of the revised building permit materials. The LLC agreed to forward the money for that purpose, and the DCRA official with whom Mr. Agipong was working quickly accepted the offer.

Unknown to Mr. Agipong, after suggestion of the bribe, the LLC informed the FBI of Mr. Agipong's plan and, with the money in-hand from the LLC, Mr. Agipong was confronted by the FBI before the bribe was consummated. Mr. Agipong immediately acknowledged his bribery plan when confronted by the FBI. After full and complete cooperation with the FBI and the Department of Justice, Mr. Agipong agreed to plead guilty before an impending indictment.

To the extent that certain facts identified in this Memorandum are different or expanded from those presented by the government, Mr. Agipong explains that this process has been extremely stressful to him and often the weight of his guilt has overtaken any instinct to challenge details. Prior to entering his guilty plea, Mr. Agipong informed counsel that the essential purpose of the bribe was to advance the LLC's application to the head of the line and thereby reduce the processing time at DCRA by several weeks. It was not to obtain an unlawful building permit. He also explained that the fee assessed against the LLC was properly reduced to $3,000 and would have been reduced regardless of the bribe. These clarifications were expressed in open court at the plea hearing, as evidenced by the attached transcript excerpt (See attachment), and again to the Probation Office during preparation of the Presentence Investigation Report. The government did not oppose Mr. Agipong's clarified facts at the plea hearing, and has not opposed them as provided to the Probation Office. Mr. Agipong asks to Court to accept his expanded and clarified facts, as presented in the attached transcript excerpt from the plea hearing and as provided here, as the more accurate explanation of the events resulting in the offense.

### B. Seriousness of the Offense

Mr. Agipong acknowledges that bribery of a public official is a serious offense. He understands that the integrity of government, fairness to other District of Columbia residents, and public confidence in government all suffer when an individual is able to bribe a public official to gain an advantage over others. At the same time, Mr. Agipong fully accepts his guilt and responsibility for committing the offensive conduct, and acknowledges the devastating wrong turn that he made.

### C. Need to Promote Respect for the Law

Mr. Agipong's felony conviction, the high-profile press coverage generated by this case, the months of uncertainty after being first confronted by the FBI, the shame and isolation Mr. Agipong has experienced and continues to encounter, and the restraint on Mr. Agipong's liberty that *any* sentence will impose, are sufficient to promote respect for the law.

Immediately after suggesting the bribe to the LLC, Mr. Agipong was uncomfortable with the direction he had suggested. However, Mr. Agipong proceeded with the bribery plan against all reasonable thought, given the apparent cooperation he received from both the LLC and DCRA, and feeling otherwise helpless to resolve the matter quickly relative to the LLC's urgency.

Mr. Agipong is haunted by the memory of each opportunity he had and missed to reject and renounce his aberrant bribery scheme. He is ashamed that he did not choose a lawful approach and is profoundly affected as a result. The experience has engendered in Mr. Agipong a sincere respect for the law and remorse for his actions.

As a testimony to his acceptance of responsibility and respect for the legal system, Mr. Agipong immediately acknowledged his wrongdoing when initially confronted by the FBI. He has fully and diligently complied with all requests of the government. He agreed to enter a guilty plea before an indictment, and provided the government with any and all information requested to advance their continued investigation.

### D. Need to Afford Adequate Deterrence to Criminal Conduct

There is nothing in the record or as reported by the Probation Office which would suggest that a sentence of imprisonment is necessary to deter Mr. Agipong from committing another crime.

Likewise to deter others from committing acts of bribery of a public official, imprisonment of Mr. Agipong is not necessary to meet this objective. In the course of his private work, Mr. Agipong continues to visit the DCRA offices. In view of notorious media accounts of his crime and conviction for this incident, Mr. Agipong has been shunned and avoided by colleagues and contacts at DCRA and by other professionals in the industry aware of his transgression. The deterrent effect of Mr. Agipong's conviction on those who associate with the DCRA is evident.

### E. Need to Protect the Public

Mr. Agipong's conduct in offering a bribe to a DCRA official was a dramatic departure from the normal context of his life. At DCRA, Mr. Agipong's crime is well known and condemned. All indications are that incarceration is not necessary to protect the public.

### F. History and Characteristics of the Defendant

NEVER before September 2006 had Mr. Agipong EVER suggested or entertained the idea of offering a bribe to DCRA, or to anyone. Before he committed this crime, Mr. Agipong's life was marked by hard work, generosity and decency. He has an impressive employment record, is a devoted husband and father of three accomplished children, and engages in charitable work and community activities, all of which reflect Mr. Agipong's core nature.

Mr. Agipong contends that he has never committed a crime of any kind before September 2006, and takes exception with the characterization in paragraph 25 of the Presentence Investigation Report that a Housing Regulation violation from 1984 was a crime. This matter concerned a faulty heater in a rental unit Mr. Agipong owned at the time at 831 L Street, NE. Instead of informing Mr. Agipong, the tenant complained directly to the District government. The government notified Mr. Agipong of the heater problem, which he repaired within 24 hours. When the contentious tenant complained again about the heater, the government imposed a $1,000 fine, which Mr. Agipong paid after he confirmed that the heater was in working order. The incident resulted in a civil citation and was not criminal in nature. Mr. Agipong neither appeared in court nor before a judge or magistrate concerning the matter. Therefore, the Court should regard Mr. Agipong as having a clear criminal record.

Moreover, Mr. Agipong has not hesitated to cooperate fully and completely with the government in its investigation and prosecution of this crime, and in its investigation of potential other crimes related to the DCRA and the building industry in general.

While the government is disappointed that Mr. Agipong is unable to provide them information concerning other specific acts of crime involving DCRA, the Court should recognize that Mr. Agipong has been truthful, forthright and cooperative at all times in the government's investigation. The Court should not penalize Mr. Agipong because he is unaware of other crimes and has not associated with others so engaged.

### G. Need to Provide a Just Punishment

Mr. Agipong's crime was motivated by neither personal greed nor profit. Rather, he committed the bribe on DCRA out of frustration with a broken regulatory system, and empathy for the desperation of his newfound client, the LLC, which sought Mr. Agipong's professional assistance out of crisis in the face of an onerous stop-work order. What Mr. Agipong expected to gain from his engagement with the LLC was his normal professional fee to prepare new drawings and a corrected building permit application. Only the LLC and the DCRA official would benefit directly from the radical approach he devised.

Mr. Agipong offered the bribe without the intent to commit a crime, but solely to expedite the administrative processing of the LLC's revised and corrected drawings and building plans. Nonetheless, Mr. Agipong blames only himself for what he acknowledges was an extremely bad and inexcusable decision on his part.

Never before September 2006 has Mr. Agipong ever engaged in bribery or other criminal conduct. Moreover, he has not associated with anyone known to have committed a bribe.

Mr. Agipong bears great emotional distress and professional despondency daily as a result of this crime. Family and friends have grown distant from him and

continue to shun him for his shameful actions. After a long career as a public servant, an officer of a charitable organization, and a naturalized citizen who is proud of his adopted country, Mr. Agipong is repulsed and offended by his own betrayal of all the principles and ethics he hopes for his three children. Mr. Agipong realizes that, for the rest of his life, he will suffer personal consequences and deep regret for this reckless decision.

Mr. Agipong's immediate and full cooperation with the government after the initial confrontation reflects Mr. Agipong's profound remorse and devastation over his offense, as well as his desire to make amends for his wrongdoing.

## CONCLUSION

In view of the foregoing factors in this case, a just punishment does not require a sentence of incarceration. Accordingly, Mr. Agipong requests the Court to impose a sentence of probation accompanied by appropriate conditions, including a period of home detention and community service, as the Court deems necessary.

May 21, 2007

Respectfully submitted,

By: _/s/ Brigitte L. Adams_
Brigitte L. Adams (D.C. Bar #426034)
For Defendant Yaw Oteng-Agipong
2800 Wisconsin Ave., N.W. #208
Washington, D.C. 20007
(202) 363-8190 Tel

## CERTIFICATE OF SERVICE

I hereby certify that on this 21st day of May, 2007, a copy of the foregoing Memorandum in Aid of Sentencing was served, by consent, via facsimile transmission on Daniel P. Butler for the United States of America at 555 4th Street, NW, Room 5231, Washington, D.C. 20530, at (202) 307-2304.

_/s/ Brigitte L. Adams_

-9-

# Attachment
TRANSCRIPT OF PLEA HEARING

```
 1                  UNITED STATES DISTRICT COURT
 2                      DISTRICT OF COLUMBIA
 3   UNITED STATES OF AMERICA          CRIMINAL ACTION NO. 07-0034
 4                                     WASHINGTON, DC
 5   VERSUS                            THURSDAY, MARCH 8, 2007
 6
 7   YAW OTENG-AGIPONG                 10:15 A.M.
 8
 9                          PLEA HEARING
10            BEFORE THE HONORABLE RICARDO M. URBINA
11               UNITED STATES DISTRICT COURT JUDGE
12
13   A P P E A R A N C E S:
14   FOR THE PLAINTIFF,                MR. DANIEL BUTLER, ESQ.
     UNITED STATES OF AMERICA          U.S. ATTORNEY'S OFFICE
15                                     555 Fourth Street, NW
                                       Washington, DC  20001
16
17   FOR THE DEFENDANT,                MS. BRIGITTE ADAMS, ESQ.
     YAW OTENG-AGIPONG                 2800 Wisconsin Avenue, NW
18                                     Washington, DC  20007
                                       (202) 363-8190
19
20
     REPORTED BY:                      WENDY C. RICARD, CCR, RPR
21                                     OFFICIAL COURT REPORTER
                                       333 Constitution Avenue
22                                     Room 6816
                                       Washington, DC 20001
23                                     (202) 354-3111
24   Proceedings recorded by mechanical stenography.
25   Transcript produced by computer-aided transcription.
```

1   MS. ADAMS:  Your Honor, it's just an elaboration.
2   They are essentially true.  They are true from a broad
3   perspective, but there's just a point of clarification -- two
4   points of clarification that I would like to make, which I
5   have discussed with Mr. Agipong in advance.
6       With regard to the essence of -- the purpose of the
7   $2,000-payment to the DCRA employee, it was not to -- it was
8   ultimately to have the stop work order lifted, but the
9   specific purpose of it was to expedite the processing of
10  redrafted diagrams and plats and the application form, which
11  would have conformed to the regulations with regard to zoning
12  and building requirements.
13      THE DEPUTY CLERK:  Excuse me.  All cell phones
14  should be turned off.  I'm sorry.
15      MS. ADAMS:  Thank you.  So the --
16      THE COURT:  You're saying that the $2,000 was for
17  the purpose of expediting the processing of --
18      THE DEFENDANT:  Building permits.
19      THE COURT: Drawings and other papers in order to
20  qualify the project; is that right?
21      MS. ADAMS:  In order to qualify the project which
22  would have made it within the regulations.  Mr. Agipong was
23  approached by these clients with the stop work order.  That's
24  when he first got involved with the project, and they came to
25  him under this crisis situation because their project had been

```
 1   stopped due to the stop work order.  And it was Mr. Agipong's
 2   task to correct the drawings, redraft the application, and get
 3   a proper building permit which was the plan all along and
 4   which was the plan Mr. Agipong was carrying out.
 5           The $2,000 came into play when Mr. Agipong
 6   approached the DCRA employee to get the processing of that
 7   redrafted application expedited so that -- and I'm just
 8   throwing out this here -- which something that would have
 9   taken eight weeks could have been done -- would have been done
10   within a week or a few days because of the payment of the
11   $2,000.
12           We are not saying that that was a correct thing to
13   do.  We are standing here before the Court accepting
14   responsibility and acknowledging our wrongdoing in that.  And
15   -- but it is merely a clarification that we were not willing
16   to pay the $2,000 to circumvent the law in terms building a --
17   putting up a construction that would have been in violation of
18   the regulations, but merely to expedite the processing of a
19   redrafted application. And, furthermore, with regard to the
20   second statement of the permit, the price of the stop work
21   order -- that there is a fee that's levied because of the stop
22   work order, it indicates in here that there was a reduction of
23   that stop work order fee, and the reduction of that fee, yes,
24   would have occurred at the end of this process, but that would
25   have occurred legally and legitimately, albeit, on a more
```

1   expedited basis, but there was a legitimate basis for having
2   that fee reduced.
3           And Mr. Agipong has explained to me that there was a
4   series of errors and misunderstanding in terms of the stop
5   work order fee. For instance, not all of the inspections
6   would have to be redone, and it involved one property and not
7   two. And so there was a legitimate reason for reducing that
8   fee, but the essence of the payment of the $2,000 was for the
9   expedited treatment.
10          THE COURT: All right. Mr. Butler, do you have any
11  problem with the clarification that's just been provided?
12          MR. BUTLER: Your Honor, I think it still shows that
13  there is a quid pro quo. What makes this illegal is the
14  receipt of a public official of money in return for an
15  official act, and if that was to expedite the process which
16  then caused the stop work order to be lifted, the fine to be
17  reduced, the public official was still offered a quid pro quo,
18  money, that he was not entitled to in return for doing an
19  official act. And so, yes, the elements would still be made
20  out, Your Honor.
21          THE COURT: All right. This variance in how --
22  well, is the government going to dispute this interpretation
23  of what Mr. Agipong did when it comes time of sentencing?
24          MR. BUTLER: Your Honor, the government stands on
25  the statement of offense as stated and signed by the defendant

```
 1   in this case.  We will accept, for purposes of the plea here
 2   today, the fact that the -- even under the addition made by
 3   defense counsel to it, it still makes out the offense, but the
 4   government stands by what is stated in the statement of
 5   offense.
 6           THE COURT:  All right.  Well, I just want to make
 7   sure that everyone is clear.  I agree that what Mr. Agipong
 8   has admitted to with the added clarifications through counsel
 9   constitutes the offense of promising a bribe.  Because if it
10   was either to get a public official to overlook certain
11   matters and to permit something to go forward, to permit these
12   plans to go forward in an authorized way when they were
13   deficient, or whether it was to get a public official to
14   expedite treatment and consideration and approval of plans, it
15   all adds up to paying money to do something that's illegal.
16           However, I don't know precisely how the difference
17   in opinion may affect the elocution at the time of sentencing,
18   how it may affect what one version versus another version or
19   how it may affect the application of the guidelines when you
20   look at one version versus the other version because we're
21   talking about what state of mind Mr. Agipong was in when he
22   delivered the money or when he tried to bribe the official.  I
23   just want to raise it, maybe it makes no difference at all,
24   but it may have an impact, and I just want to make sure
25   everyone is aware of that.
```

```
 1          MR. BUTLER: Just to add to that, Your Honor, the
 2   government does not see the addition as a breach of the plea
 3   agreement  The government is bound by the plea agreement as
 4   written.  There was no change in that whatsoever.
 5          THE COURT: Okay.  Mr. Agipong, so with those
 6   clarifications and additions, you are admitting to the offense
 7   that's being charged; is that correct?
 8          THE DEFENDANT: Yes, sir, Your Honor.
 9          THE COURT: Has anybody said or done anything to you
10   that causes you to believe that you don't have a choice in
11   this  matter, but that you have to plead guilty?  I'll repeat
12   it. Has anybody said or done anything to you that makes you
13   think that you don't have a choice, you have to plead guilty,
14   you can't go to trial, you have to plead guilty?  Has anybody
15   said anything to you like that?
16          THE DEFENDANT: No, Your Honor.
17          THE COURT: Are you under the influence of any drug,
18   alcohol, medication, fear, anything at all, which at this time
19   would prevent you from being able to think clearly and make an
20   intelligent decision about what to do?
21          THE DEFENDANT: Nothing, Your Honor.
22          THE COURT: Are you satisfied with the services of
23   your attorney, the way counsel has handled your case, given
24   you advice, and assisted you in reaching this very important
25   decision about what to do?
```

```
 1          THE COURT:  Yes.  There is an order I've just signed,
 2   and it will set forth the schedule for the filing of
 3   submissions connected to the sentencing process.
 4          MS. ADAMS:  Thank you very much.  Thank you.
 5          THE COURT:  You're welcome.
 6               [END OF PROCEEDINGS]
 7                  C E R T I F I C A T E
 8
 9          I, Wendy C. Ricard, Official United States Court
10   Reporter in and for the District of Columbia, do hereby
11   certify that the foregoing proceedings were taken down by
12   me in shorthand at the time and place aforesaid,
13   transcribed under my personal direction and supervision,
14   and that the preceding pages  represent a true and correct
15   transcription, to the best of my ability and
16   understanding.
17
18
19
20                          _____
21                          Wendy C. Ricard, CCR, RPR
22                          Official U.S. Court Reporter
23
24
25
```